## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN KANTORCZYK, | Civil Action No ____2:22-cv-19____ |
| *Plaintiff,* | |
| v. | COMPLAINT |
| GENE COOK and GENE COOK SUPPORTS, LLC, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

### COMPLAINT

Plaintiff Bryan Kantorczyk, by and through his undersigned attorney, hereby brings this action against Gene Cook and Gene Cook Supports, LLC ("GCS") for violation of the False Claims Act (31 U.S.C. § 3730(h)), COBRA 29 U.S.C. §§ 1132 and 1161-1169, the Pennsylvania Whistleblower Law (43 P.S. § 1423), the Pennsylvania Older Adults Protective Services Act (35 P.S. § 10225.302), and for wrongful discharge under Pennsylvania law. The claims asserted in this Complaint are based on Defendants retaliating against or intimidating Mr. Kantorczyk for his attempts to accurately report and stop various categories of fraud Defendants were perpetrating against the United States and the Commonwealth of Pennsylvania.

i

## TABLE OF CONTENTS

**NATURE OF THE CLAIM** ...................................................................................**2**

**PARTIES**..............................................................................................................**2**

    A.  Plaintiff – Bryan Kantorczyk ............................................................ 2

    B.  Defendant Gene Cook ..................................................................... 3

    C.  Defendant Gene Cook Supports, LLC.............................................. 3

**JURISDICTION AND VENUE**...............................................................................**3**

**FACTS** .................................................................................................................**4**

    I.  Governing Law................................................................................. 4

        A.  The Federal False Claims Act ...................................................... 5

        B.  The Government Healthcare Program - Medicaid ........................ 6

        C.  Pennsylvania Title 55 – Human Services .................................... 8

        D.  The Pennsylvania Older Adults Protective Services Act.............. 9

        E.  The Pennsylvania Whistleblower Law........................................ 10

        F.  ERISA/COBRA ........................................................................... 11

    II.  Plaintiff's Employment................................................................. 12

    III.  Defendants' Fraudulent Acts ........................................................ 13

        A.  Inadequate Training................................................................. 13

        B.  Up Billing ................................................................................. 13

        C.  PPP Loan COVID-19 Hazard Pay Fraud .................................... 14

    IV.  Plaintiff Reports the Fraud ........................................................... 15

    V.  Defendants Retaliate .................................................................... 17

        A.  Termination.............................................................................. 17

        B.  COBRA/ERISA Violation ........................................................... 17

**CAUSES OF ACTION**.......................................................................................**18**

## NATURE OF THE CLAIM

1.      Plaintiff sues Defendants to recover damages he incurred, including lost front and back pay, special damages, non-monetary damages, statutory damages, plus treble damages, punitive damages, reasonable attorney's fees, and costs, together with pre- and post-judgment interest.

2.      Defendant GCS employed Mr. Kantorczyk, from December 2015 to October 2021, first as Chief Compliance Officer and then, after a companywide set of title changes, as the Director of Quality Assurance.

3.      In these roles, Mr. Kantorczyk reported directly to, and took direction from, Mr. Cook, the owner and CEO of GCS.

4.      Mr. Kantorczyk's job required that he track and report on compliance deficiencies occurring at GCS.

5.      Instead of taking action to remedy the many serious deficiencies and outright Medicaid fraud Mr. Kantorczyk identified, Defendants chose to terminate his employment.

## PARTIES

### A.      Plaintiff – Bryan Kantorczyk

6.      Plaintiff, Bryan Kantorczyk, is an individual resident and domiciliary of the Commonwealth of Pennsylvania who resides in Westmoreland County Pennsylvania.

**B.   <u>Defendant Gene Cook</u>**

7.     Defendant Gene Cook is an individual resident and domiciliary of the Commonwealth of Pennsylvania who resides at 194 Race Track Road, Ruffs Dale, PA 15679.

8.     Mr. Cook is the CEO of Defendant Gene Cook Supports LLC and, upon information and belief, owns some or all of the company.

**C.   <u>Defendant Gene Cook Supports, LLC</u>**

9.     Defendant Gene Cook Supports, LLC ("GCS") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a registered address of 194 Race Track Road, Ruffs Dale, PA 15679.

10.    Upon information and belief, Mr. Cook owns some or all of GCS.

11.    At all times relevant to this action, GCS was Mr. Kantorczyk's employer as defined by Pennsylvania law and the Pennsylvania Whistleblower Law (43 P.S. § 1423).

12.    At all times relevant to this action, GCS is a covered employer within the meaning of the Pennsylvania Whistleblower Law (43 P.S. § 1423).

<u>**JURISDICTION AND VENUE**</u>

13.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 because this action involves a federal question.

14.    This Court also has jurisdiction under 31 U.S.C. § 3732, 31 U.S.C. § 3730(h)(2), and 29 U.S.C. § 1132(e) because Defendants can be found, reside, and

transact business within this District and because the complained of proscribed acts occurred in this District.

15.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the other claims raised are related to and form a part of the same case or controversy as the claims for which the Court has original jurisdiction.

16.     The Court may exercise personal jurisdiction over the Defendants because they reside and transact business within this District.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

**I.     Governing Law**

18.     Defendants are in the business of providing Home and Community-Based Services ("HBCS") including companionship, behavioral support, habilitation, and respite services to intellectually disabled and autistic youths and adults.

19.     Most or all of these services are provided under the Commonwealth's Medicaid Waiver program whereby defendants bill, and the Commonwealth pays, for the services delivered to Defendants' customers.

20.     The provision of these services is governed by Pennsylvania regulations and subject to the federal laws and regulations applicable to the Medicaid program generally. *See gen.,* 55 Pa. Code § 6100.

**A.**     **The Federal False Claims Act**

21.     The False Claims Act ("FCA") imposes liability upon any person who "knowingly presents, or cause to be presented [to the Government] a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so. 31 U.S.C. § 3729(a)(1).

22.     The FCA imposes liability where conducts is "in reckless disregard of the truth or falsity of the information" and clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

23.     The FCA also broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has tittle to the money or property, that - ... is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest ... " 31 U.S.C. § 3729(b)(2)(A).

24.     The FCA also protects employees from retaliation which includes being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee ... in furtherance of ... efforts to stop 1 or more violations of" the FCA. 31 U.S.C. §3730(h).

25.     Relief for retaliation includes "2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 31 U.S.C. §3730(h).

26.     Each claim for reimbursement made by Defendants through the Commonwealth's Medicaid Program is a claim under the FCA.

27.     As described below, Mr. Kantorczyk took action to stop the submission of false claims.

**B.     The Government Healthcare Program - Medicaid**

28.     Medicaid, a health insurance program created by Title XIX of the Social Security Act of 1965, authorizes grants to States for medical assistance to children, blind, aged, and disabled individuals whose income and resources are not sufficient to meet the costs of necessary medical care.  42 U.S.C. § 1396; 42 C.F.R. § 430.0; *see also* 42 U.S.C. §§ 1396-1396v. Thus, Medicaid primarily benefits people and families with low incomes and disabled individuals. Medicaid is a means-tested program that is jointly funded by the States and the Federal Government and is managed by the States. The amount of Federal funding in a State's program is determined by a statutory formula set forth in 42 U.S.C. §§ 1396b(a) and 1396d(b).

29.     A State that elects to participate in Medicaid must establish a plan for providing medical assistance to qualified beneficiaries. 42 U.S.C. § 1396a(a)-(b); *see also* 42 C.F.R. Part 430, Subparts A and B; CMS State Medicaid Manual § 13025. In exchange,

the Federal Government, through CMS, pays to each participating State the Federal

portion of the expenditures made by the participating State to providers and ensures

that the States comply with minimum standards in the administration of Medicaid. 42

U.S.C. §§ 1396, 1396a, and 1396b.

30.    The Commonwealth of Pennsylvania has elected to participate in

Medicaid, has established a State plan under Medicaid, and has promulgated

regulations that implement the State plan. *See gen.* 55 Pa. Code § 1101.11 *et seq.*

31.    Providers participating in Pennsylvania Medicaid submit claims for services

rendered to Medicaid beneficiaries to Pennsylvania Medicaid for payment.

32.    Pennsylvania Medicaid directly pays providers for reimbursable items and

services, obtaining the Federal share of the payment from accounts that draw on the

United States Treasury. *See* 42 C.F.R. §§ 430.0 *et seq.*

33.    Healthcare providers who submit claims to the Medicaid Program must

certify, in addition to medical necessity and reasonableness, that all statements in the

claim are true, accurate, and complete to the best of the provider's knowledge; that no

material fact has been omitted; that the provider is bound by all rules, regulations,

policies, standards, fee codes and procedures.

34.    When submitting a claim for reimbursement, the claimant must provide

documentation that supports the claim. Appropriate documentation typically involves

correctly coding certain services to enable the Government to reimburse the healthcare

provider at the proper rate.

7

**C.     Pennsylvania Title 55 – Human Services**

35.     Pennsylvania regulates the provision of services to disabled and autistic youths and adults.

36.     Among the many regulations is a requirement that services be provided in accordance with and under an individual plan. *See* 55 Pa. Code § 6100.221.

37.     In addition, individuals providing services must receive certain training including training specific to the individual plan for each person they serve and other mandated orientation and repeat annual training. *See* 55 Pa. Code § 6100.142 and 6100.143.

38.     New staff have 30 days to receive their initial orientation training but, in any event, must receive that training before providing any one-on-one services. 55 Pa. Code § 6100.142.

39.     In addition, each staff member must complete 12 or 24 hours of annual training depending on their role in the organization and their role in servicing the individuals using services. 55 Pa. Code § 6100.143.

40.     For example, direct service professionals, life sharers, and direct supervisors require 24 hours while most other staff must complete 12 hours. *Id.*

41.     Defendants are specifically required to keep and maintain records related to staff training. 55 Pa. Code § 6100.141.

42.     A portion of Mr. Kantorczyk's job was to create those training records.

43.     In addition, the Commonwealth Department of Human Services requires that the services provided by Defendants be billed in 15-minute units.

44.     The Commonwealth does not permit "rounding up" or billing for portions of 15-minute units. *See* Commonwealth of Pennsylvania Department of Human Services Office of Developmental Programs Individual Support Plan Manual for Individuals Receiving Targeted Support Management, Base Funded Services, Consolidated or P/FDS Waiver Services or Who Reside in an ICF/ID, Bulletin 00-17-03 at Section 19.

**D.     The Pennsylvania Older Adults Protective Services Act**

45.     The Pennsylvania Older Adults Protective Services Act protects older adults, persons who are "60 years of age or older," from abuse and neglect including from a "private agency ... which provides care ... in the individual's place of residence." 35 P.S. §§ 10225.103.

46.     GCS is a private agency that provides care in individuals' place of residence and/or in the community.

47.     In addition, the law provides protection against retaliation and intimidation.

> Any person making a report or cooperating with the agency, including providing testimony in any administrative or judicial proceeding, and the victim shall be free from any discriminatory, retaliatory or disciplinary action by an employer or by any other person or entity.   Any person who violates this subsection is subject to a civil lawsuit by the reporter or the victim wherein the reporter or victim shall recover treble compensatory damages, compensatory and punitive damages or $5,000, whichever is greater.

35 P.S. § 10225.302(c).

> Any person, including the victim, with knowledge sufficient to justify making a report or cooperating with the agency, including possibly providing testimony in any administrative or judicial proceeding, shall be free from any intimidation by an employer or by any other person or entity.   Any person who violates this subsection is subject to civil lawsuit by the person intimidated or the victim wherein the person intimidated or the victim shall recover treble compensatory damages, compensatory and punitive damages or $5,000, whichever is greater.

35 P.S. § 10225.302(c.1).

48.     Intimidation is further defined as:

> An act or omission by any person or entity toward another person which is intended to, or with knowledge that the act or omission will, obstruct, impede, impair, prevent or interfere with the administration of this act or any law intended to protect older adults from mistreatment.

35 P.S. § 10225.103.

49.     Defendants unlawfully retaliated against and/or intimidated Mr. Kantorczyk.

**E.     The Pennsylvania Whistleblower Law**

50.     The Pennsylvania Whistleblower Law prohibits the discharge or other adverse action against employees "because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing…" 43 P.S. § 1423.

51.     Wrongdoing is defined as

> A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance

or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

43 P.S. § 1422.

52.     Here, Mr. Kantorczyk repeatedly made good faith reports of violations of

State and Federal statutes and/or regulations to his employer and to an applicable

regulatory authority.

53.     As a result, Defendants unlawfully discharged him.

54.     The law provides for comprehensive relief including:

reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies.   A court shall also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the complainant prevails in the civil action.

43 P.S. § 1425.

**F.      ERISA/COBRA**

55.     The Employee Retirement Income Security Program includes, at part 6, the

requirement that certain employers, like GCS, offer certain employees, like Mr.

Kantorczyk, continuation of health coverage. *See gen.,* 29 U.S.C. §§ 1161-1169.

56.     This portion of the law is commonly known as COBRA.

57.     Defendants failed to provide any continuation of coverage and also failed

to provide the notice required by the law.

58.     Further, Mr. Kantorczyk's wife worked for GCS at the time of his unlawful discharge and Defendants refused to permit Mr. Kantorzyk's wife to add him to her existing employer-provided health insurance.

59.     The statute provides that the employer and the plan administrator may be liable to the aggrieved employee in the amount of $100 per day. 29 U.S.C. § 1132.

**II.     Plaintiff's Employment**

60.     Mr. Kantorczyk began working for GCS on or about December 7, 2015.

61.     His first title was Chief Compliance Officer.

62.     In or around March 2018, and after a business-wide retitling to remove all "Chief" designators, Mr. Kantorzyk became the Director of Quality Assurance.

63.     In his role as Director of Quality Assurance, Mr. Kantorczyk was tasked with tracking staff training.

64.     He did this by creating and maintaining various spreadsheets or databases listing each staff member and their completed or uncompleted training.

65.     The data Mr. Kantorczyk complied and maintained was regularly communicated to various internal stakeholders including Mr. Cook.

66.     On at least several occasions, Mr. Kantorczyk specifically pointed out to Mr. Cook and others at GCS that many staff members lacked the requisite training.

### III.    Defendants' Fraudulent Acts

#### A.    Inadequate Training

67.    As set out above, Commonwealth regulations require substantial training before staff is permitted to interact with clients one-on-one and then 12 or 24 hours of additional annual training.

68.    Despite these governmental regulations, its own internal processes, procedures, and rules, and Mr. Kantorczyk's repeated warnings, Defendants still directed or permitted staff members without the required training to provide services to individuals in violation of the applicable regulations.

69.    Defendants then submitted claims to various government funded health programs for the services which had been rendered by unqualified staff members.

70.    Mr. Kantorczyk reported this fraud internally, including to Mr. Cook himself, and externally.

#### B.    Up Billing

71.    As noted above, the relevant Commonwealth program requires that services provided by GCS be billed on a 15-minute block basis.

72.    Nevertheless, Defendants billed and directed staff to bill for services not completely rendered, thereby charging government healthcare programs for 15-minute blocks of time that were not provided.

73.    Mr. Kantorczyk reported this fraud internally, including to Mr. Cook himself, and externally.

C.      **PPP Loan COVID-19 Hazard Pay Fraud**

74.     GCS availed itself of two categories of government issued pandemic aid, a federally funded Hazard Pay Grant in the amount of $274,200, and a PPP loan in the amount of $1,154,500.

75.     Defendants misspent funds received from both programs.

76.     The Company's Hazard Pay Grant application asserted the money would be used to pay each front-line worker an extra $3 per hour. *See* Exhibit A, Hazard Pay Grant Application.

77.     Indeed, the amount of the grant was calculated to be exactly enough to pay each of the Company's 228.5 full-time equivalent employees $3 extra per hour for 40 hours of work over 10 weeks. *Id.*

78.     But that is not how the funds were used.

79.     Instead, each front-line worker was paid a one-time bonus of $500 ($700 less than promised), and the remaining $100,000 in Hazard Pay Grant funds was used to pay $25,000 bonuses to each of four senior managers, including Mr. Cook.

80.     The PPP funds were used, at least in part, to fund the acquisition of real property which has not been used by GCS.

81.     Mr. Kantorczyk reported this fraud internally, including to Mr. Cook himself, and externally.

IV.   **Plaintiff Reports the Fraud**

82.   As part of his normal job duties, Mr. Kantorczyk was charged with preparing for and participating in audits (also called monitoring) performed by the Commonwealth or a County.

83.   In advance of each audit/monitoring, Mr. Kantorczyk would prepare data about GCS's compliance with the various rules, regulations, and laws that apply.

84.   Before the audit/monitoring, he would also flag potential problem areas internally.

85.   Staff training was one such area of concern that Mr. Kantorczyk flagged internally including to Mr. Cook himself.

86.   On or about October 7, 2021, Westmoreland County performed a scheduled audit/monitoring on GCS.

87.   While preparing for this audit/monitoring, Mr. Kantorczyk reported to Mr. Cook various ways in which the Company was still not in compliance with applicable laws and regulations.

88.   For example, Mr. Kantorczyk reported to Mr. Cook violations of the below regulations:

   a.   55 Pa. Code § 6100.42 related to monitoring (audit) compliance;

   b.   55 Pa. Code § 6100.48 related to funding, hiring, retention and utilization;

   c.   55 Pa. Code § 6100.52 related to compliance with federal and state laws and regulations;

d. 55 Pa. Code § 6100.83 related to submission of qualification documentation;

e. 55 Pa. Code § 6100.85 related to the delivery of HCBS (Home and Community-Based Service);

f. 55 Pa. Code § 6100.141 related to training records;

g. 55 Pa. Code § 6100.142 related to orientation training for service providers;

h. 55 Pa. Code § 6100.143 related to annual training;

i. 55 Pa. Code § 6100.185 related to informing clients of their rights;

j. 55 Pa. Code § 6100.221 related to individual plans;

k. 55 Pa. Code § 6100.226 related to documentation;

l. 55 Pa. Code § 6100.227 related to documentation;

m. 55 Pa. Code § 6100.468 related to medication training;

n. 55 Pa. Code § 6100.482 related to certain conditions of payment;

o. 55 Pa. Code § 6100.483 related to improper billing;

p. 55 Pa. Code § 6100.484 related to audits;

89.     Mr. Kantorczyk also explicitly told Mr. Cook that he would honestly report the facts to the auditors/monitors and would not forge the records or his responses on behalf of Defendants.

90.     Mr. Kantorczyk followed through and honestly participated in the October 7, 2021 audit.

91.     A number of violations were disclosed during the October 7, 2021 audit.

## V.   **Defendants Retaliate**

### A.   **Termination**

92.     On or about October 8, 2021, in response to Mr. Kantorczyk's honest participation in the October 7, 2021 audit and his general refusal to ignore or participate in Defendants' many fraudulent acts, Defendants terminated Mr. Kantorczyk's employment.

93.     Defendants did not follow GCS's own internal escalating discipline policy.

94.     The termination was unlawful.

95.     Defendants attempted to paper over the unlawful termination by issuing an Employee Disciplinary Action Form ("EDAF") dated October 8, 2021.

96.     The October 8, 2021 EDAF was replete with false statements and pretextual justifications for the unlawful termination.

97.     It was also the only EDAF ever issued to Mr. Kantorczyk.

98.     Indeed, before his termination, Mr. Kantorczyk had received consistently positive performance evaluations.

99.     Mr. Cook was Mr. Kantorczyk's immediate supervisor and the decision to terminate Mr. Kantorczyk was made by Mr. Cook or at least with his approval.

### B.   **COBRA/ERISA Violation**

100.    After his unlawful termination, and despite his explicit request, Defendants failed to provide any continuation of health insurance coverage and also failed to provide the notice of availability of continuing coverage required by the law.

17

101.    Further, Mr. Kantorczyk's wife worked for GCS at the time of his unlawful

discharge and Defendants refused to permit Mr. Kantorczyk's wife to add him to her

existing employer-provided health insurance.

102.    Upon information and belief, the decisions to restrict Mr. Kantorczyk's

participation in COBRA and his wife's health insurance were made by or with the

approval of Mr. Cook.


## CAUSES OF ACTION

### COUNT I
### False Claims Act
### (Violation of 31 U.S.C. § 3730(h))

103.    The foregoing allegations are repeated and realleged as if fully set forth

herein.

104.    The False Claims Act, 31 U.S.C. § 3730(h), makes it unlawful to retaliate

against a person who takes actions to stop a violation of the False Claims Act

105.    As more particularly described above, Mr. Kantorczyk was engaged in

activity protected by the False Claims Act when he repeatedly reported Defendants'

fraudulent billing practices and refused to participate in their scheme.

106.    Mr. Kantorczyk informed Defendants on multiple occasions, both orally

and in writing, that he believed Defendants were engaging in fraudulent conduct.

107.    As a direct result of Mr. Kantorczyk having lawfully investigated and

reported to his superior and other GCS executives what he believed to be fraudulent

conduct or wrongdoing, Defendants threatened, harassed, and/or discriminated against

Mr. Kantorczyk in the terms and conditions of his employment in violation of 31 U.S.C. §

3730(h).

108.    As a direct result of these unlawful retaliatory employment practices and in

violation of 31 U.S.C. §3730(h), Mr. Kantorczyk sustained permanent and irreparable

harm, resulting in his discharge from GCS, diminution of his professional reputation,

special damages including mental suffering and anguish, generally a loss of earnings,

benefits, future earning power, front and double back pay and interest due thereon.

**COUNT II**
**Pennsylvania Whistleblower Law**
**(Violation of 43 P.S. § 1423)**
**(Against GCS)**

109.    The foregoing allegations are repeated and realleged as if fully set forth

herein.

110.    As set out in more detail above, Defendants are an "employer" as defined

by the Pennsylvania Whistleblower Law and receive money from a public body, here

Medicaid funds allocated through the Commonwealth's Department of Human Services

("DHS") and the various county governments, to perform services related to the mission

of the DHS and the counties.

111.    Mr. Kantorczyk is an "employee" and a "whistleblower" as defined by the

law.

112.    Mr. Kantorczyk made multiple good faith reports of Wrongdoing both internally at GCS including directly to Mr. Cook, and externally to the Westmoreland County auditor.

113.    The Westmoreland County auditor is an "appropriate authority" as defined by the law.

114.    The Wrongdoing Mr. Kantorczyk reported was not merely technical or minimal.

115.    Instead, the Wrongdoing was criminal in nature or otherwise violated Pennsylvania and federal law and regulations and/or the internal codes of conduct and ethics and other rules, procedures, and regulations of GCS all of which were designed to protect members of the public, including GCS's clients.

116.    For example, the Wrongdoing Mr. Kantorczyk reported related to, *inter alia*:

   a. Inadequately trained persons providing one-on-one services to vulnerable and disabled persons including Older Adults;

   b. Unlawful upcoding and other incidents of Medicaid fraud;

   c. The unlawful taking and use of PPP loan funds; and

   d. The unlawful taking of special COVID 19 grant monies.

117.    Thereafter, Defendants retaliated against Mr. Kantorczyk in the terms, conditions, and privileges of his employment and ultimately terminated his employment.

118.    Mr. Kantorczyk was terminated because of, and in retaliation for, his protected whistleblowing activities.

119.    The October 8, 2021 EDAF is a sham and any non-retaliatory justification of his termination is mere pretext.

120.    Defendants' retaliation has continued even after they wrongfully and unlawfully terminated Mr. Kantorczyk employment by refusing to permit him to access continuing healthcare coverage and preventing his wife from adding him to her existing healthcare coverage.

121.    As a result, Mr. Kantorczyk has suffered economic and non-economic damages.

**COUNT III**
**Pennsylvania Older Adults Protective Services Act**
**(Violation of 35 P.S. § 10225.302)**

122.    The foregoing allegations are repeated and realleged as if fully set forth herein.

123.    Defendants provide services to older adults under the jurisdiction of the Commonwealth and as such the Pennsylvania Older Adults Protective Services Act applies to them.

124.    Permitting untrained or inadequately trained staff to provide one-on-one services to older adults is a violation of the Older Adults Protective Services Act and other applicable law and regulations.

125.    Permitting unqualified staff to interact with older adults exposes the older adults to abuse or neglect as those terms are defined by the law and puts at least some older adults in need of protective services.

126.    Mr. Kantorczyk reported these facts to the Westmoreland County auditor and certainly possessed knowledge sufficient "to justify making a report or cooperating with the agency[.]"

127.    In retaliation for, and by way of intimidation to "obstruct, impede, impair, prevent or interfere with the administration of this act or any law intended to protect older adults from mistreatment[,]" Defendants unlawfully terminated Mr. Kantorczyk's employment.

128.    As a result, Mr. Kantorczyk has suffered economic and non-economic damages.

## COUNT IV
## Wrongful Discharge in Violation of Public Policy
### (Against GCS)

129.    The foregoing allegations are repeated and realleged as if fully set forth herein.

130.    At all times relevant and material hereto, it was the clearly defined public policy of the Commonwealth of Pennsylvania and the United States for persons with knowledge of fraud against either government to not participate in, to stop, and/or to report the fraud.

131.    It was similarly the clearly defined public policy of the Commonwealth of Pennsylvania for persons providing services to disabled and autistic youths, adults, and older adults to:

   a.  abide by the applicable laws and regulations governing the proper provision of services to vulnerable members of the public including older adults;

   b.  ensure staff members interacting with vulnerable members of the public are properly trained in accordance with the law and regulations; and

   c.  not participate in, to stop, and/or to report the abuse of vulnerable members of the public including in particular older adults.

132.    By discharging Mr. Kantorczyk from his employment because he reported suspected crimes and wrongdoing to Defendant and an outside regulatory agency, Defendants directly violated the public policy of the Commonwealth of Pennsylvania and the United States.

133.    Given the gravity of the alleged wrongdoing, Defendants' discharge of Plaintiff from his employment was wanton, outrageous, and in reckless disregard for Plaintiff's rights under state law.

134.    As a result, Mr. Kantorczyk has suffered economic and non-economic damages.

**COUNT V**
**ERISA/COBRA**
**(Violation of 29 U.S.C. §§ 1132 and 1161 *et seq*.)**
**(Against GCS)**

135.    The foregoing allegations are repeated and realleged as if fully set forth herein.

136.    ERISA provides a private right of action and remedies when an employer subject to the law fails to provide notice required by COBRA.

137.   GCS is an employer subject to ERISA and COBRA and Mr. Kantorczyk was a covered employee under the law.

138.   GCS did not provide Mr. Kantorczyk the notice required by COBRA.

139.   GCS did not permit Mr. Kantorczyk to continue his health insurance coverage and did not permit his wife to add Mr. Kantorczyk to her existing employer sponsored health insurance after his termination.

140.   As a result, Mr. Kantorczyk has suffered damages and is also entitled to statutory damages.

**WHEREFORE, Plaintiff Bryan Kantorczyk requests the following relief:**

a.   A judgment against Defendants, jointly and severally, for double his back pay, front pay, special damages, compensatory damages for emotional distress, mental anguish, and inconvenience;

b.   A judgment against Defendants, jointly and severally, for treble his compensatory damages or $5,000, whichever is greater;

c.   A judgment against Defendants, jointly and severally, for punitive damages;

d.   A judgment against Defendants, jointly and severally, for all reasonable attorneys' fees, costs, and expenses related to this action;

e.   That a trial by jury be held on all issues so triable;

f.   An award of pre- and post-judgment interest; and

g.   Such other and further relief as the Court may deem just and proper.

## <u>REQUEST FOR TRIAL BY JURY</u>

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury.

Dated: January 4, 2022

By:      */s/ Darth M. Newman*

Darth M. Newman
ID: 209448
Law Offices of Darth M. Newman LLC
1140 Thorn Run Rd, # 601
Coraopolis, PA 15108
Telephone:    412-436-3443
Email:            darth@dnewmanlaw.com

*Counsel for Plaintiff Bryan Kantorczyk*